## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____25-MJ-6538-JMS_____

IN RE SEALED COMPLAINT

_____/

FILED BY _____AT_____ D.C.

**Sep 18, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?    No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:  _____

CLAIRE M. HORRELL
TRIAL ATTORNEY
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20530
Tel: (202) 285-5630
claire.horrell@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   25-MJ-6538-JMS |
| **JABA SANEBLIDZE** | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____April 30, 2025 through present____ in the county of _____Broward_____ in the

___Southern___ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Health Care Fraud Conspiracy |

This criminal complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT.**

☑ Continued on the attached sheet.

_Complainant's signature_

Nain Nayor, Special Agent, OPM-OIG
_Printed name and title_

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __FaceTime__

Date: __September 17, 2025__

_Judge's signature_

City and state: _____Fort Lauderdale, Florida_____

Honorable Jared M. Strauss, U.S. Magistrate Judge
_Printed name and title_

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Nain Nayor, being first duly sworn, hereby depose and state as follows:

### <u>INTRODUCTION</u>

1.      I make this Affidavit in support of a criminal complaint charging Jaba Saneblidze ("SANEBLIDZE") with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349.

2.      I am a Special Agent with the United States Office of Personnel Management, Office of Inspector General ("OPM-OIG"). I have been a Special Agent with OPM-OIG since April 2022. I have completed the Criminal Investigator Training Program and the Internet Investigations Training Program at the Federal Law Enforcement Training Center. Prior to joining OPM-OIG, I was a Legal Administrative Specialist with the U.S. Attorney's Office in the Southern District of Florida, where I was tasked with assisting in civil and criminal investigations involving health care matters. In my capacity as a Special Agent with OPM-OIG, I routinely investigate criminal, civil, and administrative violations related to health care fraud committed by health care providers. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18 of the United States Code, including, but not limited to, offenses involving health care fraud, money laundering, and conspiracies to commit those offenses.

3.      This case is being investigated by OPM-OIG, the Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), Homeland Security Investigations ("HSI"), Florida Attorney General Office's Medicaid Fraud Control Unit ("MFCU"), and the Federal Bureau of Investigation ("FBI").

4.     This Affidavit is submitted for the limited purpose of establishing probable cause that SANEBLIDZE did knowingly and willfully conspire, confederate, and agree with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others, in violation of Title 18, United States Code, Section 1349, to commit health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, commercial insurers, Federal Employees Health Benefits Program ("FEHBP") insurers, Medicaid, Medicare Parts B and C, and Medigap insurers, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

5.     The information and statements contained in this Affidavit are based upon my personal knowledge and investigation, as well as documents and information provided to me by other law enforcement personnel and witnesses. Because this Affidavit is provided for the limited purpose of establishing probable cause for an arrest, I have not included all information known to me regarding this investigation, but, rather, I have set forth only those facts necessary to establish probable cause to believe that the defendant has committed the charged offense. All figures, times, and calculations set forth in this Affidavit are approximate.

## SUMMARY OF CRIMINAL CONDUCT

6.     The government's investigation has revealed SANEBLIDZE and others owned and operated a network of durable medical equipment ("DME")[1] companies, including Jabmedix Inc. ("JABMEDIX") and Medifit Health Systems LLC ("MEDIFIT") (together, the "FRAUDULENT DMEs"), that have fraudulently billed commercial insurers, FEHBP insurers, Medicaid, Medicare, Medigap insurers, and Medicare Part C insurers—also known as Medicare Advantage Organizations ("MAOs")—hundreds of millions of dollars for orthotic braces, urinary catheters, and wound dressings that beneficiaries did not need and did not receive.

### BACKGROUND

#### *Commercial Insurance*

7.     Private insurers offer various individual and family insurance plans that cover costs for medical items and services, such as DME and wound dressings, in accordance with their policies and state and federal law, including requirements that such items and services be medically necessary.

#### *Medicare and Medigap*

8.     Medicare is a federally funded health care program that provides free or below-cost health care benefits to individuals who are sixty-five years of age or older or disabled. The benefits available under Medicare are governed by federal statutes and regulations. The United States

---

[1] DME is equipment that is designed for repeated use and for a medical purpose, such as orthotic braces, continuous glucose monitors, and urinary catheters. As described herein, the FRAUDULENT DMEs also billed for wound dressings, which include alginate dressings intended to absorb exudate from wounds and promote tissue regeneration.

3

Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversees and administers Medicare. Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

9.      Medicare is subdivided into multiple program "parts." Medicare Part A covers health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covers physician services and outpatient care, including DME and wound dressings. Medicare Part C provides beneficiaries with the option to receive their Medicare Part A and B benefits through MAOs. Health care providers that provide and supply items and services to beneficiaries, whether under Medicare Part A, B, or C, are referred to "providers."

10.     To participate in Medicare Parts A and B, providers are required to submit an enrollment application. As set out in the application, every provider is required to meet certain standards to obtain and retain billing privileges with Medicare, including but not limited to (1) disclosing persons and/or organizations with a five percent or greater ownership interests or managing control; (2) abiding by applicable Medicare laws, regulations, and program instructions; and (3) refraining from knowingly presenting or causing the presentation of a false or fraudulent claim for payment by Medicare. Providers have online access to Medicare manuals and service bulletins describing proper billing procedures and billing rules and regulations.

11.     Medicare Supplemental Insurance, or "Medigap," helps fill "gaps" in Medicare Part B coverage and is sold by private health insurance companies. A Medigap plan can help pay some of the remaining health care costs not covered by Medicare, such as copayments, coinsurance, and deductibles. For DME claims, a Medigap plan generally covers approximately 20% of the claim amount. Medicare Supplemental Insurers are contractually obligated to

4

reimburse claims that are processed by Medicare, even if Medicare has subsequently suspended payment of the claims.

12.     Under Medicare Part C, MAOs are required to provide Medicare beneficiaries with the same items and services offered under other Medicare plans. MAOs, including Blue Cross & Blue Shield ("BCBS"), Aetna Inc. ("Aetna"), Anthem Insurance Companies Inc. ("Anthem"), Cigna, Humana Inc. ("Humana"), Molina Healthcare Inc. ("Molina"), Meridian Health Plan of Illinois ("Meridian Illinois"), UnitedHealth Group Inc. ("UnitedHealthcare"), and others contract with CMS to provide managed care to Medicare beneficiaries.

13.     To obtain payment for items or services provided to a beneficiary enrolled in Medicare Part C, providers submit itemized claim forms to the relevant MAO certifying that the contents of the form are true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing Medicare. The provider also certifies that the item or service billed is reasonable, medically necessary, and provided as billed.

14.     A provider need not be enrolled with Medicare to submit claims to MAOs for services provided to Medicare beneficiaries and, if not enrolled, is considered a non-participating provider. Such a provider does not have to enroll with or enter an agreement with an MAO to bill that MAO. An unenrolled provider is treated as an out-of-network provider and does not have to disclose corporate information such as ownership information or banking information. In my training and experience, I am aware that some individuals committing health care fraud will avoid registering with Medicare Parts A and/or B due to the many disclosures necessary to enroll as a provider and bill those program parts.

5

15.     To be eligible for Medicare reimbursement (whether under Medicare Part B, Part C, or Medigap), DME and wound dressings are required to be reasonable and medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, ordered by a medical professional, properly documented, and provided as represented.

### *Medicaid*

16.     The Florida Medicaid Program ("Medicaid") is a partnership between the State of Florida and the federal government that provides health care benefits to certain low-income individuals and families in Florida. Individuals who receive benefits under Medicaid are commonly referred to as Medicaid "recipients."

17.     Medicaid reimburses DME companies and other health care providers for medically necessary items and services rendered to recipients.

### *The Federal Employees Health Benefits Program*

18.     The FEHBP is a federally funded health benefit program for federal employees, retirees, and their eligible spouses and dependent children. OPM administers the FEHBP and contracts with numerous health insurance plans that process and pay health care claims on behalf of the FEHBP. OPM reimburses the contracted health insurance plans for 100% of the health care claims they pay, and 100% of their administrative expenses, plus a negotiated service charge.

19.     The FEHBP covers DME that is medically necessary and provided as represented.

### *Health Care Benefit Programs*

20.     Medicare, Medicare Part C, Medigap, Medicaid, the FEHBP, and commercial insurers are "health care benefit programs" as defined by 18 U.S.C. § 24(b).

6

***The Defendant and Relevant Individuals and Entities***

21.     SANEBLIDZE is a Georgian citizen and is believed to reside in Oakland Park, Florida. Florida Secretary of State records identify SANEBLIDZE as the current sole officer and manager of MEDIFIT and JABMEDIX.

22.     Co-Conspirator 1 is a Georgian citizen whose location is currently unknown. Co-Conspirator 1 is the former sole officer and president of MEDIFIT and the current president and authorized official of another DME company under investigation for a criminal scheme similar to the scheme outlined in this Affidavit.

23.     Co-Conspirator 2 is an individual with unknown citizenship residing in an unknown location. Co-Conspirator 2 is the registered account holder for a Vultr account ending in x2952, a cloud services subscription account funded by SANEBLIDZE and used in the submission of fraudulent claims by JABMEDIX.

24.     Co-Conspirator 3 is a Georgian citizen believed to reside in Boca Raton, Florida. Co-Conspirator 3 is the current sole officer and manager of another DME company under investigation for the same crimes outlined in this complaint.

25.     MEDIFIT is a DME company incorporated on or about July 25, 2023, under the laws of Florida with a principal place of business located at 7491 West Oakland Park Boulevard, Suite 306-1, Fort Lauderdale, Florida 33319. From May 31, 2024, until March 27, 2025, Florida Secretary of State records show that MEDIFIT was under the sole management of Owner 1. On March 27, 2025, Articles of Amendment were filed removing Owner 1 and adding Co-Conspirator 1 as the sole authorized member and manager of MEDIFIT. On or about April 30, 2025, Articles

7

of Amendment were again filed, removing Co-Conspirator 1 and adding SANEBLIDZE as the sole authorized member and manager of MEDIFIT.

26.     JABMEDIX is a DME company incorporated on or about May 5, 2025, under the laws of Florida, with a principal place of business also located at 7491 West Oakland Park Boulevard, Suite 306-1, Fort Lauderdale, Florida 33319.

27.     To bill Medicare or an MAO, a DME company is required to obtain a National Provider Identifier ("NPI") number through the National Plan and Provider Enumeration System ("NPPES"). Upon approval, the health care provider acquires a unique 10-digit NPI. After an NPI is provided, NPPES publishes certain parts of the NPI record to the NPPES NPI Registry. The NPPES NPI Registry shows that MEDIFIT is an active health care organization controlled by Owner 1, with an enumeration date of July 28, 2023, and an NPI number of 1942981394.[2] The NPPES NPI Registry further shows that JABMEDIX is an active health care organization controlled by SANEBLIDZE, with an enumeration date of May 7, 2025, and an NPI number of 1568252245.

## PROBABLE CAUSE

28.     As outlined in greater detail below, there is probable cause to believe that from in or around April 2025, and continuing through at least August 2025, SANEBLIDZE, Co-

_____

[2] Although Florida state records identify SANEBLIDZE as the current sole authorized member of MEDIFIT, records obtained from CMS confirm that neither Co-Conspirator 1 nor SANEBLIDZE have ever been identified to CMS as an owner or manager of MEDIFIT. Instead, Owner 1 remains the sole owner and manager associated with MEDIFIT's CMS registration. At no time since MEDIFIT's transfer to Co-Conspirator 1 has a Medicare enrollment application or change of ownership been submitted as per Medicare's requirements.

8

Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others conspired to commit health care fraud, causing over $150 million in false and fraudulent billing to Medicare, Medigap insurers, MAOs, Medicaid, FEHBP insurers, and commercial insurers, at least approximately $978,967 of which has been paid and deposited into bank accounts controlled by SANEBLIDZE.[3]

*Analysis of Claims Data*

29.     As part of the investigation, law enforcement obtained claims data for JABMEDIX and MEDIFIT from CMS, Aetna, Cigna, UnitedHealthcare, BCBS of Michigan, and BCBS of Florida. Law enforcement's analysis of the claims data has revealed trends that, in my training and experience, are indicative of fraudulent billing.

30.     A review of the claims data shows that the FRAUDULENT DMEs began submitting a high volume of claims shortly after changes of ownership (in the case of MEDIFIT) or incorporation (in the case of JABMEDIX). For example, between January 1, 2025, and Co-Conspirator 1's acquisition of MEDIFIT on March 27, 2025, MEDIFIT submitted 190 claims to Medicare for 59 beneficiaries. In the month after Co-Conspirator 1 became the sole authorized member and manager of MEDIFIT, MEDIFIT submitted approximately 68,386 claims to

---

[3] The claim amounts reported for JABMEDIX are approximate due to how MAOs report claims and payment data. MAOs submit their Medicare Part C claims data to CMS, which memorializes the items and services provided to the Medicare Part C beneficiaries but does not include official paid amounts for those services. MAOs are not required to submit billed or paid amounts for the reported claims. While some do provide this information, others elect to report no billed or paid amounts, or to report fee-for-service equivalent billed or paid amounts. CMS does not independently verify the amounts.

Medicare for approximately 13,101 beneficiaries.[4] Similarly, MAOs reported that JABMEDIX began submitting claims to MAOs on May 29, 2025—the same month it was incorporated by SANEBLIDZE—and submitted approximately 8,787 claims for approximately 1,156 beneficiaries within approximately one month of incorporation. In my training and experience, I know that this kind of spike in billing is typical of DME companies involved in fraudulent schemes.

31.     Likewise, the FRAUDULENT DMEs consistently submitted claims for multiple DME items purportedly prescribed and provided to every single associated beneficiary.  For example, of the 13,101 beneficiaries for whom MEDIFIT submitted claims to Medicare, all 13,101 received a back brace, two wrist braces, and two knee braces. Likewise, MAOs reported that each of the 1,156 beneficiaries billed for by JABMEDIX purportedly received five or more orthotic braces, and more than half also received a urinary catheter. In my training and experience, I know that this kind of spike in billing is typical of DME companies involved in fraudulent schemes.

*Beneficiary Complaints and Interviews*

32.     From April 2025 until the present, insurers have received thousands of complaints from beneficiaries stating that the FRAUDULENT DMEs billed their insurance plans for DME

---

[4] As noted above, on April 30, 2025, ownership of MEDIFIT was transferred from Co-Conspirator 1 to SANEBLIDZE. On May 5, 2025, SANEBLIDZE incorporated JABMEDIX with the Florida Secretary of State, using the same street address and suite number assigned to MEDIFIT. Around that same time, MEDIFIT stopped submitting claims to Medicare and JABMEDIX began submitting fraudulent claims to MAOs, commercial insurers, and FEHBP insurers.

that the beneficiaries did not request, receive, or need. Many beneficiaries also posted complaints on public online forums.[5]

33. HHS-OIG has received numerous complaints and referrals from Medicare beneficiaries, MAOs, and MAO plan members regarding the FRAUDULENT DMEs submitting claims for items and services not rendered.

34. On or about May 29, 2025, Beneficiary 1 filed a complaint with HHS-OIG regarding charges from MEDIFIT for DME that Beneficiary 1 did not ask for or receive. On April 21, 2025, MEDIFIT billed Beneficiary 1's Medicare account for knee, wrist, and back braces, and a supply of alginate surgical dressings purportedly provided to Beneficiary 1. On August 25, 2025, law enforcement interviewed Beneficiary 1, who stated he/she is insured by Medicare and is a member of an Aetna-administered Medigap plan. Beneficiary 1 has never received a back, knee, or other brace and does not have any condition that would support the prescription of an orthotic brace. Beneficiary 1 stated that he/she lives in Brookfield, Wisconsin, and there would be no reason for his/her primary care physician to refer him/her to a medical company in Florida.

35. On or about May 12, 2025, Beneficiary 2 filed a complaint with HHS-OIG regarding fraudulent charges for braces that he/she did not receive or order. On April 21, 2025, MEDIFIT billed Beneficiary 2's Medicare account for back, knee, and wrist braces purportedly provided to Beneficiary 2. On August 25, 2025, law enforcement interviewed Beneficiary 2, who

---

[5] *See, e.g., Jabmedix Inc*, Better Business Bureau (accessed Sept. 16, 2025), https://www.bbb.org/us/fl/tamarac/profile/medical-supplies/jabmedix-inc-0633-92050945/customer-reviews (collecting numerous reviews describing claims from JABMEDIX as a "scam," "fake," "fraud," and "theft").

11

stated that he/she did not authorize MEDIFIT to bill his/her Medicare for any orthotic braces and that he/she was never seen by and has never heard of the referring provider listed on the claim.

36.    On or about May 20, 2025, JABMEDIX billed a FEHBP insurance plan for a lumbar brace, left knee brace, right knee brace, left wrist brace, right wrist brace, left ankle brace, and right ankle brace purportedly provided to Beneficiary 3. On July 28, 2025, law enforcement interviewed Beneficiary 3. Beneficiary 3 stated that he/she had no condition that would require him/her to be prescribed any of these braces. Beneficiary 3 further stated that he/she was not familiar with JABMEDIX and had not received orthotic braces from JABMEDIX.

37.    On or about June 28, 2025, JABMEDIX billed Humana, in its capacity as an MAO, for a urinary catheter, lumbar brace, knee brace, left wrist brace, right wrist brace, left ankle brace, and right ankle brace purportedly provided to Beneficiary 4. On August 11, 2025, law enforcement interviewed Beneficiary 4, who stated that he/she had not received any braces or a urinary catheter, and had no condition that would require him/her to be prescribed a brace or urinary catheter. Beneficiary 4 stated that he/she had never heard of JABMEDIX or the purported referring provider.

*Physician and Medical Practice Interviews*

38.    Data maintained by CMS shows that between April 15, 2025, and April 25, 2025, Medicare received claims from MEDIFIT for approximately 210 patients, all of whom were purportedly prescribed two wrist braces, two knee braces, and a back brace by Physician 1. On September 12, 2025, law enforcement contacted Physician 1's office. A nurse working for Physician 1 and with access to Physician 1's records stated that Physician 1 had not referred 210

12

patients to MEDIFIT and does not refer patients to DME providers outside his/her home state of Indiana.

39.    On or about June 25, 2025, Humana, in its capacity as an MAO, reported that it received claims from JABMEDIX for back, knee, and wrist braces, and urinary catheters, purportedly prescribed to five Medicare Part C beneficiaries by Physician 2. Each of the five beneficiaries purportedly received a left knee brace, a right knee brace, a left wrist brace, a right wrist brace, a rigid back brace, and a urinary catheter. On August 14, 2025, law enforcement contacted Physician 2, who confirmed that none of the five beneficiaries are patients of Physician 2 and none of them were prescribed DME by Physician 2.

*Claims Submission*

40.    In my training and experience, individuals involved in health care fraud schemes may attempt to evade detection and prosecution by using technology to obscure their association with the scheme. For example, individuals may use virtual private servers ("VPSs") in order to avoid associating claims submission with their personal computers, or to conceal their true identity or location.[6] They may also create fraudulent profiles on electronic claims submission platforms to make it appear that a third party is responsible for the claim's submission. However, by tracing Internet Protocol ("IP") addresses—unique identifiers associated with a specific physical or virtual

---

[6] VPSs serve as isolated, virtual environments on a physical server operated by a hosting provider. VPS hosting providers use virtualization technology to split a single physical server into multiple private server environments, or "instances." Once a VPS is assigned to a specific account, an individual in control of that account can use the VPS to run virtualized operating systems from their computer over the Internet—for example, to perform computing tasks like file generation and storage.

13

device accessing the internet—law enforcement is often able to associate even anonymized accounts or profiles to specific individuals or real-world devices. Where a single VPS or associated account is used to submit claims or conduct transactions on behalf of multiple different entities, IP address tracing can also reveal connections across those entities that would not otherwise be apparent.

41.     Here, claims data obtained in the investigation showed that the FRAUDULENT DMEs submitted their fraudulent claims electronically. The investigation of the FRAUDULENT DMEs revealed that JABMEDIX maintains an account with Availity, a company that provides a platform through which providers can electronically submit claims for payment to health care benefit companies. SANEBLIDZE is listed as the administrator and signor for JABMEDIX's Availity account.

42.     In response to a grand jury subpoena, Availity provided law enforcement with records showing that the majority of the claims submitted on behalf of JABMEDIX originated from IP address 45.77.166.229 (the "JABMEDIX IP"). According to publicly available Whois records, the JABMEDIX IP is hosted by Vultr, a global cloud infrastructure provider.

43.     In response to a grand jury subpoena, Vultr provided law enforcement with records showing that the JABMEDIX IP is assigned to a VPS subscription held by a Vultr account ending x0514 ("Vultr Account 1"). Account records show that Vultr Account 1 was created on May 9, 2025, and is registered to SANEBLIDZE. Records further show that SANEBLIDZE funded the account on May 9, 2025, via two PayPal transactions from a user account in his name.

44.     The PayPal transactions used to fund Vultr Account 1 originated from a second IP address that Whois records show is also hosted by Vultr (the "FUNDING IP"). In response to a

grand jury subpoena, Vultr provided law enforcement with records showing that the FUNDING IP is assigned to a VPS subscription held by a Vultr account ending x2952 ("Vultr Account 2"). Vultr Account 2 is registered to Co-Conspirator 2 and was most recently funded by SANEBLIDZE via a credit card transaction on May 20, 2025. Account records show that SANEBLIDZE first attempted to fund Vultr Account 2 using the same PayPal account that funded Vultr Account 1, but the transaction failed.

45.     Review of the IP addresses associated with Vultr Account 2 shows that other IP addresses associated with the account were also involved in the submission of fraudulent claims. For example, an Availity account registered to Co-Conspirator 3 used an IP address associated with Vultr Account 2 to submit fraudulent claims from on or about May 19, 2025—one day before SANEBLIDZE added additional funds to the account—through at least on or about July 16, 2025.

*Financial Records*

46.     A review of JABMEDIX's financial records obtained via grand jury subpoena did not reveal financial activity consistent with running a large-scale, legitimate DME business. For example, review was unable to conclusively identify a large and consistent stream of expenses tied to business activities typically expected with the operation of DME companies, such as DME purchases, shipping and packaging fees, and storage fees. In fact, no such expenses appear on the accounts analyzed to date.

47.     On or about May 13, 2025, SANEBLIDZE opened an account ending in x3166 ("Account 1") at a Bank 1 branch located in Broward County, Florida, in the name of JABMEDIX. On the account opening paperwork, SANEBLIDZE identified himself as the sole owner of

15

JABMEDIX. Since this account was opened, SANEBLIDZE has remained the sole signor on the account.

48.     Records obtained from Bank 1 show that between May 13, 2025, and June 30, 2025, Account 1 received tens of thousands of dollars in deposits from commercial insurers and MAOs, including Kaiser Permanente, BCBS of Texas, BCBS of Illinois, and Aetna. Surveillance records obtained from Bank 1 show that multiple of these transactions were conducted by SANEBLIDZE in person. Account 1 also received hundreds of thousands of dollars in deposits from other JABMEDIX accounts and a DME company belonging to Co-Conspirator 1. The only withdrawals during this period were one reversed transaction and hundreds of thousands of dollars in outgoing wire transfers to foreign entities located in Hong Kong.

49.     On or about May 12, 2025, SANEBLIDZE opened an account ending in x5980 ("Account 2") at a Bank 2 branch located in Broward County, Florida, in the name of JABMEDIX. On the account opening paperwork, SANEBLIDZE identified himself as the president of JABMEDIX. Since this account was opened, SANEBLIDZE has remained the sole signor on the account.

50.     Records obtained from Bank 2 show that between May 12, 2025, and July 30, 2025, Account 2 received hundreds of thousands of dollars in deposits from commercial insurers and MAOs, including Blue Cross Medicare Advantage Plan, Emblem Health, Humana, Select Health, Aetna, BCBS of Oklahoma, BCBS of Texas, and BCBS of Illinois. The only withdrawals during this period were wire transfers to another JABMEDIX account, hundreds of thousands of dollars in cashier's checks or cash withdrawals, and an outgoing wire transfer to a foreign entity located in Hong Kong.

16

## CONCLUSION

51.     Based on the facts set forth above, I respectfully submit that probable cause exists

to believe that, between at least April 2025 and present, in Broward County, in the Southern

District of Florida, and elsewhere, SANEBLIDZE conspired with Co-Conspirator 1, Co-

Conspirator 2, Co-Conspirator 3, and others to commit health care fraud, in violation of Title 18

United States Code, Sections 1349.


FURTHER AFFIANT SAYETH NAUGHT.


NAIN NAYOR
SPECIAL AGENT
OFFICE OF PERSONNEL MANAGEMENT
OFFICE OF THE INSPECTOR GENERAL


Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by:
    FaceTime
(specify reliable electronic means).

Date: September 17, 2025

HONORABLE JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

17